UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PAMELA TORRENCE,**
                **Plaintiff,**

-vs-                                                                 Case No.  6:07-cv-199-Orl-19KRS

**PFIZER, INC., SOUTHWEST INTERNAL**
**MEDICINE SPECIALISTS, APARNA**
**HERNANDEZ, and SARAH ARMY,**
                **Defendants.**
_____

## ORDER

This case comes before the Court on the following:

1. Motion To Dismiss of Defendants Southwest Internal Medicine Specialists, Aparna Hernandez and Sarah Army (Doc. No. 3, filed January 24, 2001 in state court and February 8, 2007 in federal court);

2. Plaintiff's Motion To Remand (Doc. No. 9, filed February 15, 2007);

3. Motion To Strike And/Or Remand Defendant Pfizer's Petition For Removal With Incorporated Memorandum Of Law (Doc. No. 12, filed February 22, 2007);

4. Defendant Pfizer's Opposition To Remand (Doc. No. 21, filed March 1, 2007);

5. Plaintiff's Request For Leave To File Reply To Defendant Pfizer's Opposition To Remand Motion (Doc. No. 25, filed March 8, 2007);

6. Defendant Pfizer's Opposition To "Motion To Strike And/Or Remand" (Doc. No. 26, March 8, 2007); and

7. Defendant Pfizer's Memorandum In Opposition To Plaintiff's Motion For Leave To File Reply And Motion To Strike Same (Doc. No. 27, filed March 13, 2007).

## I. Background

Plaintiff Pamela Torrence, both on her own behalf and acting as the personal representative of the Estate of Gary Torrence, brought this action against Defendants Pfizer, Inc. ("Pfizer"), Southwest Internal Medicine Specialists, Aparna Hernandez and Sarah Army (collectively, the "Healthcare Defendants") in state court in Orange County, Florida. (Doc. No. 2). According to the allegations of the Complaint, Gary Torrence committed suicide as a result of the physical properties of the drug Zoloft, a selective serotonin inhibitor sold and marketed by Pfizer which the Healthcare Defendants had provided to Mr. Torrence. (*Id.*, ¶¶ 9-16).

Pfizer removed the state court action to this Court, averring that the Healthcare Defendants were fraudulently joined by Plaintiff to defeat this Court's diversity jurisdiction. (Doc. No. 1, ¶¶ 6, 8). Currently pending before the Court are several motions that orbit around the issues of fraudulent joinder and remand as follows.

## II. Motion For Leave To File Reply

At docket number 25, Plaintiff requests leave to file a reply to Pfizer's opposition to remand. Local Rule 3.01(c) requires that a litigant seek leave of Court before a reply or any further information directed to the motion or response may be filed with the Court. The Local Rules direct litigants to request leave of Court in the following manner:

> A motion requesting leave to file . . . a reply or further memorandum shall not exceed three (3) pages, shall specify the length of the proposed filing, and shall not include, as an attachment or otherwise, the proposed motion response, reply, or other paper.

LOCAL R. 3.01(d). Plaintiff's motion fails to specify the length of the proposed filing and also improperly attaches the proposed reply. Plaintiff's motion is denied as unnecessary to the resolution of the motion. (Doc. No. 25). The Appendix from docket number 25, which is titled "(Proposed)

Plaintiff's Reply To Defendant Pfizer's Opposition To Remand Motion", is stricken from the record.

### III. Motions For Remand[1]

A civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a).[2] Federal courts have diversity jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and the action is between the citizens of different states. 28 U.S.C. § 1332. Federal diversity jurisdiction under Section 1332 requires "complete diversity". *See, e. g.*, *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1564 (11th Cir. 1994). That is, the citizenship of every plaintiff must be diverse, meaning different, from the citizenship of every defendant. *See id.* However, as for many rules, there is an exception.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The doctrine of fraudulent joinder is a necessary corollary of federal diversity jurisdiction which permits the removal of an action if the plaintiff joins a non-diverse party fraudulently. *Id.*; *see also Henderson v. Wash. Nat'l Mut. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The Court of Appeals for the Eleventh Circuit applies the fraudulent joinder doctrine (1) when there is no possibility that the plaintiff can prove a cause of action against a non-diverse defendant, (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts, or (3)

---

[1] The Court construes the motion of the Healthcare Defendants at docket number 12 as a motion for remand.

[2] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

when a diverse defendant is joined with a non-diverse defendant against whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Henderson*, 454 F.3d at 1281. The removing defendant(s) must show that any one of these three grounds is present by clear and convincing evidence. *Id.*

Pfizer's removal of this action was based solely on the first ground. (Doc. No. 1, ¶¶ 8-10). There, removal of an action is not proper "[i]f there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the [non-diverse] defendants." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983) (emphasis added).[3] The plaintiff need not have a winning case against any such defendant. *Triggs*, 154 F.3d at 1287. Rather, the plaintiff need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate. *Id.*

Pfizer contends that each of the claims against the Healthcare Defendants is barred by the exclusivity of Florida's medical malpractice statutory provisions. (Doc. No. 1, ¶¶ 8-10). Plaintiff argues that she can avoid the exclusivity of Florida's medical malpractice provisions by pleading that the administration of Zoloft to the decedent constituted an overarching "commercial enterprise" conducted by both Pfizer and the Healthcare Defendants. (Doc. No. 9, 3-7). Both parties contest the interpretation of Florida case law concerning the intersection of Florida's medical malpractice provisions and the law of strict liability, but neither Pfizer nor Plaintiff make separate arguments for

---

[3] The opinion of the *Coker* Court was later superceded by statute on another ground, as recognized by the Court in *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 n.3 (11th Cir. 1989).

any of Plaintiff's remaining claims.[4] The Healthcare Defendants also object to removal because they have not consented for this case to be heard in a federal forum. (Doc. No. 12).

The fraudulent joinder inquiry turns on whether Plaintiff's claims arise "out of the rendering of, or the failure to render, medical care or services." FLA. STAT. § 766.106(1)(a); *Corbo v. Garcia*, --- So. 2d ----, 2007 W.L. 624722, *1 (Fla. Dist. Ct. App. 2007). This statutory definition broadly encompasses any claim for damages meeting this criteria and re-characterizes such claim as one for "medical malpractice". *See* FLA. STAT. § 766.106(1)(a).

Under the statute, claims for medical malpractice are subject to the presuit screening requirements of Chapter 766 if the wrongful act is directly related to the improper application of medical services and the use of professional judgment or skill. *See Corbo v. Garcia*, 2007 W.L. 624722, *1 (Fla. Dist. Ct. App. 2007). "The key inquiry under the statute is whether the action aris[es] out of any medical, dental, or surgical diagnosis, treatment, or care." *Id.* (quoting *Fassy v. Crowley*, 884 So.2d 359, 363 (Fla. Dist. Ct. App. 2004)) (internal quotations omitted). Florida courts tie this inquiry to the medical negligence standard of Section 766.102(1) of the Florida Statutes. In other words, the test for determining whether a defendant is entitled to the benefit of the presuit screening requirements of section 766.106(1), Florida Statutes (1989), is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in

---

[4] The Court concludes, therefore, that Plaintiff has waived any objections that she may have as to the claims of negligent failure to warn and breach of warranty that are separate and apart from her "commercial enterprise" argument. *E.g. Penn. Lumbermen Mut. Ins. Co. v. T.R. Miller Mill Co.*, 2006 W.L. 276964, *14 (S.D. Ala. 2006) (holding arguments not initially raised in a motion "come too late and need not be reviewed"); *see also Mariano v. Potter*, 2006 W.L. 907772, *3 n.6 (S.D. Ala. 2006) (collecting sixteen district court opinions which share this view). Thus, all of Plaintiff's claims against Defendant Pfizer stand or fall together. Furthermore, the Court concludes that each of Plaintiff's claims would be subject to the same analysis under Florida law. *Corbo v. Garcia*, --- So. 2d ----, 2007 W.L. 624722, *1 (Fla. Dist. Ct. App. 2007).

section 766.102(1). *Weinstock v. Groth*, 629 So. 2d 835 (Fla. 1993) (citing *NME Properties, Inc. v. McCullough*, 590 So. 2d 439 (Fla. Dist. Ct. App. 1991)).

In this case, it is clear from the allegations of the Complaint that each of Plaintiff's claims against the Healthcare Defendants arises out of the provision of medical treatment and care. The Complaint states that the Healthcare Defendants operate as general family healthcare providers in Central Florida and that general family healthcare providers can "initiat[e] antidepressant *treatment*" for their patients. (Doc. No. 2, ¶ 12, emphasis added). Further, the Healthcare Defendants provided Mr. Torrence with Zoloft after he sought medical treatment for insomnia. (*Id.*, ¶¶ 15, 16). Finally, the Complaint alleges that Mr. Torrence ingested Zoloft "as instructed." (*Id.*, ¶ 18). Thus, it is clear from the face of the Complaint that Plaintiff's claims against the Healthcare Defendants arise from such Defendants' choice of Zoloft as a treatment modality for Mr. Torrence's insomnia. This is the quintessential example of the use of a healthcare provider's medical judgment, skill, or expertise, and it falls within the purview of Chapter 766.

The language cited by Plaintiff from the case of *Porter v. Rosenberg*, 650 So. 2d 79 (Fla. Dist. Ct. App. 1995) does not change this conclusion. Plaintiff emphasizes the actions of Pfizer when she argues that it models its business as a corporate enterprise which extends to the Healthcare Defendants once such Defendants receive and distribute sample medications from Pfizer. However, under Florida law, the operative transaction takes place between the healthcare provider and its patient. *See Porter*, 650 So. 2d at 83. If that transaction is based upon the use of the healthcare provider's medical judgment, skill, or expertise, then it is within the realm of medical negligence. The language of *Porter* is merely a recognition of this; it is a specific application of the general

inquiry used by Florida courts.[5]

The Complaint does not allege that Plaintiff has satisfied the presuit requirements of Chapter 766, and therefore the Court must conclude that Plaintiff has failed to state a claim against the Healthcare Defendants. Consequently, as the Complaint stood upon removal to this Court, there is no possibility that Plaintiff could prove a cause of action against the Healthcare Defendants.

As to the argument of the Healthcare Defendants that there was no consent by them to removal, it is black letter law that the Court must disregard the citizenship of non-diverse defendants once their fraudulent joinder has been shown. *See, e.g.*, *Henderson*, 454 F.3d at 1281. The Healthcare Defendants' objections to removal on the ground of lack of consent, therefore, are without merit.

## IV. Motion To Dismiss

As noted above, Plaintiff has failed to state a claim against the Healthcare Defendants. Therefore, the Court grants the Healthcare Defendants' motion to dismiss.

## V. Conclusion

Based on the forgoing, the Court **DENIES** Plaintiff's Motion for Remand (Doc. No. 9), **DENIES** the Motion To Strike And/Or Remand (Doc. No. 23) of Defendants Southwest Internal Medicine Specialists, Aparna Hernandez and Sarah Army (the "Healthcare Defendants"), **DENIES** Plaintiff's Motion For Leave To File Reply (Doc. No. 25), **STRIKES** from the record the Appendix from Doc No. 25, and **GRANTS** the Motion To Dismiss (Doc. No. 3) of the Healthcare Defendants.

---

[5] In fact, the Court in *Porter* uses the same statutes and case law to craft its "predominant purpose" test for strict liability claims as cases from other Florida courts that considered issues of premises liability, the use of medial equipment, and mishandling of urine samples. *See generally Corbo v. Garcia*, 2007 W.L. 624722 (Fla. Dist. Ct. App. 2007).

Plaintiff's claims against the Healthcare Defendants are dismissed without prejudice, and she may file, within thirty (30) days of the date of this Order, an Amended Complaint which complies with this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 14, 2007.

*[Signature]*
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record